1   BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
    Alan R. Plutzik (Bar No. 077785)
2   L. Timothy Fisher (Bar No. 191626)
    Kathryn A. Schofield (Bar No. 202939)
3   2125 Oak Grove Road, Suite 120       E-filing
    Walnut Creek, California 94598
4   Telephone: (925) 945-0200
    Facsimile: (925) 945-8792
5
    SCHIFFRIN & BARROWAY LLP
6   Eric L. Zagar
    Sandra G. Smith
7   280 King of Prussia Road
    Radnor, PA 19087
8   Telephone: (610) 667-7706
    Facsimile: (610) 667-7056
9
    Attorneys for Plaintiff
10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12
                        SAN JOSE DIVISION       C06-04671 JW
13
    JESSE BROWN, Derivatively on Behalf of      Case No.
14  Nominal Defendant CHORDIANT
    SOFTWARE, INC.,                             **SHAREHOLDER DERIVATIVE**
15                                              **COMPLAINT**
                              Plaintiff,
16
           v.
17
    STEPHEN KELLY, CARY G. MORGAN,
18  STEVE G. VOGEL, SAMUEL T.
    SPADAFORA, DONALD J. MORRISON,
19  ALLEN SWANN, JEREMY COOTE, DAVID
    R. SPRINGETT, WILLIAM RADUCHEL, and
20  STEVEN R. SPRINGSTEEL,
21                            Defendants,
22           and                                <u>**JURY TRIAL DEMANDED**</u>
23  CHORDIANT SOFTWARE, INC.
24                       Nominal Defendant.
25
26
27
28
    SHAREHOLDER DERIVATIVE COMPLAINT
    CASE NO.
    48183

1    Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the

2    defendants named herein.

3    ## NATURE OF THE ACTION

4    1.    This is a shareholder's derivative action brought for the benefit of nominal

5    defendant Chordiant Software, Inc. ("Chordiant" or the "Company") against certain members of its

6    Board of Directors (the "Board") and certain of its executive officers seeking to remedy

7    defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other

8    violations of law.

9    2.    In gross breach of their fiduciary duties as officers and/or directors of Chordiant, the

10   Individual Defendants (as defined herein) colluded with one another to:

11   (a)    improperly backdate dozens of grants of Chordiant stock options to Chordiant's

12          former Chief Executive Officer Stephen Kelly, and several other current and former

13          Chordiant executives, in violation of the Company's shareholder-approved stock

14          option plans;

15   (b)    improperly record and account for the backdated stock options, in violation of

16          Generally Accepted Accounting Principles ("GAAP");

17   (c)    improperly take tax deductions based on the backdated stock options, in violation of

18          Section 162(m) of the Tax Code; and

19   (d)    produce and disseminate to Chordiant shareholders and the market false financial

20          statements and other SEC filings that improperly recorded and accounted for the

21          backdated option grants and concealed the improper backdating of stock options.

22   3.    As a result of the Individual Defendants' egregious misconduct, Chordiant has

23   sustained millions of dollars in damages, and Kelly and the other recipients of the backdated stock

24   options have garnered millions of dollars in unlawful profits.

25   ## JURISDICTION AND VENUE

26   4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this

27   Complaint states a federal question. This Court also has jurisdiction over this action pursuant to 28

28   U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in

SHAREHOLDER DERIVATIVE COMPLAINT                                                        1
48183

1    controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental

2    jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action

3    is not a collusive one to confer jurisdiction on a court of the United States which it would not

4    otherwise have.

5          5.     Venue is proper in this district because a substantial portion of the transactions and

6    wrongs complained of herein, including the defendants' primary participation in the wrongful acts

7    detailed herein, occurred in this district. One or more of the defendants either resides in or

8    maintains executive offices in this district, and defendants have received substantial compensation

9    in this district by engaging in numerous activities and conducting business here, which had an

10   effect in this district.

11                                           **PARTIES**

12         6.     Plaintiff Jesse Brown, a citizen of the State of Texas, is, and was at all relevant

13   times, a shareholder of nominal defendant Chordiant.

14         7.     Nominal defendant Chordiant Software, Inc. is a Delaware corporation with its

15   principal executive offices located at 20400 Stevens Creek Boulevard, Suite 400, Cupertino,

16   California 95014. According to its public filings, Chordiant is an enterprise software company that

17   provides process-driven software applications to global consumer companies to deliver strategies

18   for revenue growth, operational efficiency and compliance with regulations.

19         8.     Defendant Stephen Kelly ("Kelly") served as the Company's Chief Executive

20   Officer from January 2002 to February 2006, as President and Chief Operating Officer from

21   October 2000 to January 2002, as Senior Vice President of Operations of Europe, Middle East and

22   Africa Operations from October 1998 to October 2000, and as Vice President of Europe, Middle

23   East and Africa Operations from October 1997 to September 1998. Upon information and belief,

24   Kelly is a citizen of the State of California.

25         9.     Defendant Cary G. Morgan ("Morgan") served as the Company's Vice President

26   and Corporate Controller from 1997 to at least 2005. Morgan also served as Acting Chief

27   Financial Officer, Acting Chief Accounting Officer, and Acting Secretary from October 2000 to

28   March 2001. Upon information and belief, Morgan is a citizen of the State of California.

SHAREHOLDER DERIVATIVE COMPLAINT                                                    2
48183

1          10.    Defendant Steve G. Vogel ("Vogel") served as the Company's Senior Vice

2    President and Chief Financial Officer from March 2001 to November 2003.  Upon information and

3    belief, Vogel is a citizen of the State of California.

4          11.    Defendant Samuel T. Spadafora ("Spadafora") has served as the Company's

5    Chairman of the Board of Directors since November 1999, and as Chief Strategy Officer and head

6    of the corporate strategy team since 2004.  Spadafora also served as a director of the Company

7    from June 1998 to January 2002, as the Company's Chief Executive Officer from June 1998 to

8    January 2002, and as President from June 1998 to October 2000.  Upon information and belief,

9    Spadafora is a citizen of the State of California.

10         12.    Defendant Donald J. Morrison ("Morrison") served as the Company's President

11   from 2003 to May 2005, as Executive Vice President of Business Development and Marketing

12   from September 2000 to 2003, as Executive Vice President of Worldwide Sales and Marketing

13   from January 1999 to September 2000, and as Executive Vice President of Marketing from June

14   1997 to January 1999.  Upon information and belief, Morrison is a citizen of the State of

15   California.

16         13.    Defendant Allen Swann ("Swann") served as the Company's President of

17   International Operations from March 2001 to September 2004.  Upon information and belief,

18   Swann is a citizen of the State of California.

19         14.    Defendant Jeremy Coote ("Coote") served as the Company's President of Americas

20   Operations from December 2001 to 2002.  Upon information and belief, Coote is a citizen of the

21   State of California.

22         15.    Collectively, defendants Kelly, Morgan, Vogel, Spadafora, Morrison, Swann, and

23   Coote are referred to herein as the "Officer Defendants."

24         16.    Defendant David R. Springett ("Springett") has served as a director of the Company

25   since January 2000, as a member of the Compensation Committee of the Board of Directors

26   ("Compensation Committee") since 2002, and as a member of the Audit Committee of the Board

27   of Directors ("Audit Committee") since at least 2001.  Upon information and belief, Springett is a

28   citizen of the State of California.

SHAREHOLDER DERIVATIVE COMPLAINT                                 3
48183

1

17.     Defendant William Raduchel ("Raduchel") has served as a director of the Company

2     since February 2003, as a member of the Compensation Committee since 2003, and as a member

3     Audit Committee since 2003.  Raduchel also served as a director of the Company from August

4     1998 to May 2001, and as a member of the Audit Committee in at least 2001.  Upon information

5     and belief, Raduchel is a citizen of the State of California.

6

18.     Defendant Steven R. Springsteel ("Springsteel") has served as the Company's

7     President and Chief Executive Officer since February 2006, and as a director of the Company since

8     at least January 2004.  Springsteel also served as a member of the Compensation Committee from

9     January 2004 to September 2005, and as a member of the Audit Committee from January 2004 to

10     January 2006.  Upon information and belief, Springsteel is a citizen of the State of California.

11

19.     Collectively, defendants Springett, Raduchel, and Springsteel are referred to herein

12     as the "Compensation Committee Defendants."

13

20.     Collectively, defendants Springett, Raduchel, and Springsteel are referred to herein

14     as the "Audit Committee Defendants."

15

21.     Collectively, defendants Springett, Raduchel, and Springsteel are referred to herein

16     as the "Committee Defendants."

17

22.     Collectively, the Officer Defendants and Committee Defendants are referred to

18     herein as the "Individual Defendants."

19

## DUTIES OF THE INDIVIDUAL DEFENDANTS

20

23.     By reason of their positions as officers and/or directors of the Company and because

21     of their ability to control the business and corporate affairs of the Company, the Individual

22     Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust,

23     loyalty, and due care, and were and are required to use their utmost ability to control and manage

24     the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were and are

25     required to act in furtherance of the best interests of the Company and its shareholders so as to

26     benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each

27     director and officer of the Company owes to the Company and its shareholders the fiduciary duty

28

to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

24.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

25.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers, and directors of the Company were required to, among other things:

    (a)     exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    (b)     exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

    (c)     exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company;

    (d)     exercise good faith in ensuring that the Company's financial statements were prepared in accordance with GAAP; and

    (e)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

26.     The Individual Defendants, particularly the Officer Defendants, and the members of the Audit Committee, were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of

SHAREHOLDER DERIVATIVE COMPLAINT
48183

5

1    accurately recording, processing, summarizing, and reporting financial data, a corporation must

2    establish an internal accounting control structure.  Among other things, the Individual Defendants

3    were required to:

4          (1)      make and keep books, records, and accounts, which, in reasonable detail, accurately

5                  and fairly reflect the transactions and dispositions of the assets of the issuer; and

6          (2)      devise and maintain a system of internal accounting controls sufficient to provide

7                  reasonable assurances that –

8                (a)      transactions are executed in accordance with management's general or

9                      specific authorization;

10              (b)      transactions are recorded as necessary to permit preparation of financial

11                      statements in conformity with [GAAP].

12        27.      Chordiant's Audit Committee Charter provides that the Audit Committee shall,

13    among other things,

14          (a)      review, upon completion of the audit, the financial statements proposed to be

15                included in the Company's annual report on Form 10-K to be filed with the

16                Securities and Exchange Commission and to recommend whether or not such

17                financial statements should be so included;

18         (b)      discuss with management and the Auditors the results of the annual audit, including

19                the Auditors' assessment of the quality, not just acceptability, of accounting

20                principles, the reasonableness of significant judgments and estimates, any material

21                audit adjustments proposed by the Auditors and immaterial adjustments not

22                recorded, the adequacy of the disclosures in the financial statements and any other

23                matters required to be communicated to the Committee by the Auditors under

24                generally accepted auditing standards;

25         (c)      review and discuss with management and the Auditors, as appropriate, the

26                Company's disclosures contained under the caption "Management's Discussion and

27                Analysis of Financial Condition and Results of Operations" in its periodic reports

28                filed with the Securities and Exchange Commission; and

(d)     prepare the report required by the rules of the Securities and Exchange Commission to be included in the Company's annual proxy statement.

## FACTUAL ALLEGATIONS

28.     At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for executive officers of Chordiant and administered the Company's stock option plans.

29.     From 2000 to 2002, the Compensation Committee granted the Officer Defendants Chordiant stock options as follows:

| Name | Purported Date of Grant | Exercise Price | Number of Options |
|---|---|---|---|
| Kelly | 5/2/00 | $6.25 | 50,000 |
| | 6/23/00 | $11.125 | 50,000 |
| | 1/6/01 | $3.469 | 800,000 |
| | 8/9/01 | $2.66 | 100,000 |
| | 7/26/02 | $0.65 | 300,000 |
| Morgan | 5/2/00 | $6.25 | 15,000 |
| | 6/23/00 | $6.375 | 22,500 |
| Vogel | 3/13/01 | $3.063 | 312,500 |
| | 10/3/01 | $1.80 | 25,000 |
| | 7/26/02 | $0.65 | 50,000 |
| Spadafora | 8/9/01 | $2.66 | 100,000 |
| | 7/26/02 | $0.65 | 150,000 |
| Morrison | 8/9/01 | $2.66 | 60,000 |
| | 10/2/01 | $1.80 | 50,000 |
| | 7/26/02 | $0.65 | 116,141 |
| Swann | 7/26/02 | $0.65 | 75,000 |
| Coote | 7/26/02 | $0.65 | 75,000 |

30.     Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of incentive stock options is the fair market value of the Company's common stock as valued by the Board of Directors on the date of the grant.

31.     Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

32.     Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

33.     In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just before a substantial rise in Chordiant's stock price, as demonstrated in the following chart:

**Summary of Option Grants and Surrounding Stock Price Performance**

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 5/2/00 | $6.25 | $8.62 | $6.75 | 8.0% |
| 6/23/00 | $11.125 | $11.97 | $17.00 | 52.8% |
| 1/6/01 | $3.469 | $2.00 | $4.31 | 24.2% |
| 3/13/01 | $3.063 | $3.25 | $3.25 | 6.1% |
| 8/9/01 | $2.66 | $2.70 | $2.84 | 6.8% |
| 10/2/01 | $1.80 | $2.31 | $2.40 | 33.3% |
| 10/3/01 | $1.80 | $2.34 | $2.46 | 36.7% |
| 7/26/02 | $0.65 | $1.01 | $0.76 | 16.9% |

34.     The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of the Officer Defendants, the Committee Defendants

improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Chordiant stock was lower than the market price on the actual grant dates. This improper backdating, which violated the terms of the Company's stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts they had to pay the Company upon exercise of the options.

## Dissemination of False Financial Statements

35.     As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

(a)     violated the terms of the Company's shareholder-approved stock option plans;

(b)     violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

(c)     violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

(d)     produced and disseminated to Chordiant shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

36.     The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

(a)     Form 10-K for the fiscal year ended December 31, 2000, filed with the SEC on March 27, 2001 and signed by defendants Kelly, Vogel, Spadafora, and Springett;

(b)     Form 10-K for the fiscal year ended December 31, 2001, filed with the SEC on March 29, 2002 and signed by defendants Kelly, Vogel, Spadafora, and Springett;

(c)     Form 10-K for the fiscal year ended December 31, 2002, filed with the SEC on March 28, 2003 and signed by defendants Kelly, Vogel, Spadafora, Springett, and Raduchel.

37.    Furthermore, from 2000 to 2003, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating, disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants.

38.    On July 24, 2006, Chordiant announced that the Company's Audit Committee had begun a voluntary internal review of its historical stock option grant practices and related accounting. Specifically, the Company stated:

> Chordiant Software, Inc., the leading provider of Customer Experience software and services, today announced that the Audit Committee of the Company's Board of Directors is in the process of conducting an independent review of the Company's historical stock option grant practices and related accounting. This review was initiated in response to a review management conducted. The audit committee is being assisted by independent legal counsel and independent forensic accounting consultants. The Company stated that it will not be in a position to comment on these matters until after the Audit Committee has completed its review.

> In addition, Chordiant said it will not file its quarterly report on Form 10-Q for the quarter ended June 30, 2006 until after the completion of the review, and the Company does not expect the review to be completed until after the date the Form 10-Q is required to be filed.

39.    On July 25, 2006, Chordiant announced that the Company had been contacted by the Securities and Exchange Commission regarding an inquiry related to its past stock option practices. Specifically, the Company stated:

> Chordiant Software, Inc., the leading provider of Customer Experience software and services, announces that it has been contacted today by the Securities and Exchange Commission regarding an inquiry relating to Chordiant's past stock option grant practices. Chordiant will cooperate fully with the SEC's inquiry. On July 24, 2006, Chordiant announced that the Audit committee of the Company's Board of Directors is in the process of conducting an independent review of the Company's historical stock option grant practices and related accounting. The Audit Committee's review was initiated in response to a review management conducted.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

40.    The Officer Defendants breached their fiduciary duties by:

(a)    colluding with the Compensation Committee Defendants to backdate stock option grants;

1           (b)     colluding with the Audit Committee Defendants to violate GAAP and

2                     Section 162(m);

3           (c)     colluding with the other Individual Defendants to produce and disseminate

4                     to Chordiant shareholders and the market false financial statements that

5                     improperly recorded and accounted for the backdated option grants and

6                     concealed the improper backdating of stock options; and

7           (d)     colluding with the other Individual Defendants to file false proxy statements

8                     in order to conceal the improper backdating of stock options.

9      41.     The Officer Defendants' foregoing misconduct was not, and could not have been, an

10  exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit

11  themselves at the expense of the Company.

12      42.     The Compensation Committee Defendants breached their fiduciary duties by:

13           (a)     colluding with the Officer Defendants to backdate stock option grants;

14           (b)     colluding with the Officer Defendants and Audit Committee Defendants to

15                     violate GAAP and Section 162(m);

16           (c)     colluding with the other Individual Defendants to produce and disseminate

17                     to Chordiant shareholders and the market false financial statements that

18                     improperly recorded and accounted for the backdated option grants and

19                     concealed the improper backdating of stock options; and

20           (d)     colluding with the other Individual Defendants to file false proxy statements

21                     in order to conceal the improper backdating of stock options.

22      43.     The Audit Committee Defendants breached their fiduciary duties by:

23           (a)     colluding with the Officer Defendants to violate GAAP and Section 162(m);

24           (b)     colluding with the other Individual Defendants to produce and disseminate

25                     to Chordiant shareholders and the market false financial statements that

26                     improperly recorded and accounted for the backdated option grants and

27                     concealed the improper backdating of stock options; and

28

1

2

(c)     colluding with the other Individual Defendants to file false proxy statements

in order to conceal the improper backdating of stock options.

3     44.     The Audit Committee Defendants' foregoing misconduct was not, and could not

4     have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly

5     benefit the Officer Defendants at the expense of the Company.

6     45.     As a direct and proximate result of the Individual Defendants' foregoing breaches of

7     fiduciary duties, the Company has sustained millions of dollars in damages, including, but not

8     limited to, the additional compensation expenses and tax liabilities the Company was required to

9     incur, loss of funds paid to the Company upon exercise of options, and costs and expenses incurred

10    in connection with the SEC investigation of the Company.

11                    **DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS**

12    46.     Plaintiff brings this action derivatively in the right and for the benefit of the

13    Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

14    47.     Plaintiff is an owner of Chordiant common stock and was an owner of Chordiant

15    common stock at all times relevant hereto.

16    48.     Plaintiff will adequately and fairly represent the interests of the Company and its

17    shareholders in enforcing and prosecuting its rights.

18    49.     As a result of the facts set forth herein, plaintiff has not made any demand on the

19    Chordiant Board of Directors to institute this action against the Individual Defendants.  Such

20    demand would be a futile and useless act because the Board is incapable of making an independent

21    and disinterested decision to institute and vigorously prosecute this action.

22    50.     The Board currently consists of eight directors: defendants Kelly, Spadafora,

23    Springett, Raduchel, and Springsteel, and directors Charles Hoffman, Richard G. Stevens, and

24    David Weymouth.  The following directors are incapable of independently and disinterestedly

25    considering a demand to commence and vigorously prosecute this action:

26    (a)     Kelly and Spadafora because they are directly interested in the improperly

27    backdated stock option grants complained of herein;

28

SHAREHOLDER DERIVATIVE COMPLAINT                                                    12
48183

1

(b)     Springett, Raduchel, and Springsteel because as a members of the Compensation

2              Committee, they directly participated in and approved the misconduct alleged herein

3              and are substantially likely to be held liable for breaching their fiduciary duties, as

4              alleged herein.  Moreover, by colluding with the Officer Defendants, as alleged

5              herein, Springett, Raduchel, and Springsteel have demonstrated that they are unable

6              or unwilling to act independently of the Officer Defendants;

7

(c)     Springett, Raduchel, and Springsteel because as members of the Audit Committee

8              they directly participated in and approved the misconduct alleged herein and are

9              substantially likely to be held liable for breaching their fiduciary duties, as alleged

10              herein.  Moreover, by colluding with the Officer Defendants, as alleged herein,

11              Springett, Raduchel, and Springsteel have demonstrated that they are unable or

12              unwilling to act independently of the Officer Defendants; and

13

(d)     Kelly, Spadafora, Springett, Raduchel, and Springsteel, because as directors of the

14              Company they directly participated in and approved the Company's filing of false

15              financial statements and other SEC filings, as alleged herein.  Moreover, by

16              colluding with the Officer Defendants and others, as alleged herein, Kelly,

17              Spadafora, Springett, Raduchel, and Springsteel have demonstrated that they are

18              unable or unwilling to act independently of the Officer Defendants.

19         51.     Furthermore, demand is excused because the misconduct complained of herein was

20    not, and could not have been, an exercise of good faith business judgment.

21                                          **COUNT I**

22                          **AGAINST THE INDIVIDUAL DEFENDANTS**
                            **FOR BREACH OF FIDUCIARY DUTY**

23

24         52.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set

      forth fully herein.

25

26         53.     As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to

      refrain from unduly benefiting themselves and other Company insiders at the expense of the

27
      Company.

28

---

SHAREHOLDER DERIVATIVE COMPLAINT
48183

13

1      54.    As alleged in detail herein, the Officer Defendants breached their fiduciary duties

2  by:

3      (a)    colluding with the Compensation Committee Defendants to backdate stock option

4             grants;

5      (b)    colluding with the Audit Committee Defendants to violate GAAP and Section

6             162(m);

7      (c)    colluding with the other Individual Defendants to produce and disseminate to

8             Chordiant shareholders and the market false financial statements that improperly

9             recorded and accounted for the backdated option grants and concealed the improper

10            backdating of stock options; and

11     (d)    colluding with the other Individual Defendants to file false proxy statements in

12            order to conceal the improper backdating of stock options.

13     55.    The Officer Defendants' foregoing misconduct was not, and could not have been, an

14  exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit

15  themselves at the expense of the Company.

16     56.    As alleged in detail herein, the Compensation Committee Defendants breached their

17  fiduciary duties by:

18     (a)    colluding with the Officer Defendants to backdate stock option grants;

19     (b)    colluding with the Officer Defendants and Audit Committee Defendants to violate

20            GAAP and Section 162(m);

21     (c)    colluding with the other Individual Defendants to produce and disseminate to

22            Chordiant shareholders and the market false financial statements that improperly

23            recorded and accounted for the backdated option grants and concealed the improper

24            backdating of stock options; and

25     (d)    colluding with the other Individual Defendants to file false proxy statements in

26            order to conceal the improper backdating of stock options.

27

28

1      57.    The Compensation Committee Defendants' foregoing misconduct was not, and

2   could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and

3   did, unduly benefit the Officer Defendants at the expense of the Company.

4      58.    As alleged in detail herein, the Audit Committee Defendants breached their

5   fiduciary duties by:

6         (a)    colluding with the Officer Defendants to violate GAAP and Section 162(m);

7         (b)    colluding with the other Individual Defendants to produce and disseminate to

8                Chordiant shareholders and the market false financial statements that improperly

9                recorded and accounted for the backdated option grants and concealed the improper

10                backdating of stock options; and

11        (c)    colluding with the other Individual Defendants to file false proxy statements in

12                order to conceal the improper backdating of stock options.

13     59.    The Audit Committee Defendants' foregoing misconduct was not, and could not

14   have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly

15   benefit the Officer Defendants at the expense of the Company.

16     60.    As a direct and proximate result of the Individual Defendants' foregoing breaches of

17   fiduciary duties, the Company has sustained millions of dollars in damages, including, but not

18   limited to, the additional compensation expenses and tax liabilities the Company was required to

19   incur, loss of funds paid to the Company upon exercise of options, and costs and expenses incurred

20   in connection with the SEC investigation of the Company.

21                                   <u>COUNT II</u>

22                      **AGAINST THE INDIVIDUAL DEFENDANTS**
                  **FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES**
23            **EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER**

24     61.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set

25   forth fully herein.

26     62.    Each of the Individual Defendants intentionally or recklessly employed devices,

27   schemes, and artifices to defraud and engaged in acts, practices, and a course of business which

28   operated as a fraud and deceit upon the Company.

SHAREHOLDER DERIVATIVE COMPLAINT                                          15
48183

1    63.    The Company relied upon the Individual Defendants' fraud in granting the Officer

2    Defendants options to purchase shares of Chordiant common stock.

3    64.    As a direct and proximate result of the Individual Defendants' fraud the Company

4    has sustained millions of dollars in damages, including, but not limited to, the additional

5    compensation expenses and tax liabilities the Company was required to incur, loss of funds paid to

6    the Company upon exercise of options, and costs and expenses incurred in connection with the

7    SEC investigation of the Company.

8                                    **COUNT III**

9                        **AGAINST THE OFFICER DEFENDANTS**
     **FOR COMMON LAW RESTITUTION/UNJUST ENRICHMENT**

10   65.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set

11   forth fully herein.

12   66.    The Officer Defendants were unjustly enriched by their receipt and retention of

13   backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to

14   retain the benefits thereof.

15   67.    To remedy the Officer Defendants' unjust enrichment, the Court should order them

16   to disgorge to the Company all of the backdated stock options they received, including the

17   proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

18         WHEREFORE, Plaintiff demands judgment as follows:

19         A.    Against all of the Individual Defendants and in favor of the Company for the

20              amount of damages sustained by the Company as a result of the Individual

21              Defendants' breaches of fiduciary duties and statutory violations;

22         B.    Ordering the Officer Defendants to disgorge to the Company all of the

23              backdated stock options they received, including the proceeds of any such

24              options that have been exercised, sold, pledged, or otherwise monetized;

25         C.    Granting appropriate equitable relief to remedy Defendants' breaches of

26              fiduciary duties;

27

28

SHAREHOLDER DERIVATIVE COMPLAINT                                                    16
48183

1         D.     Awarding to plaintiff the costs and disbursements of the action, including

2              reasonable attorneys' fees, accountants' and experts' fees, costs, and

3              expenses; and

4         E.     Granting such other and further relief as the Court deems just and proper.

5    **JURY TRIAL DEMANDED**

6    Plaintiff demands a trial by jury.

7    **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

8    Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than

9    the named parties there is no such interest to report.

10        Respectfully submitted,

11   Dated:  August 1, 2006     BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

12

13        _____

14             L. Timothy Fisher

15        Alan R. Plutzik
     Kathryn A. Schofield

16        2125 Oak Grove Road, Suite 120
     Walnut Creek, California  94598

17        Telephone:  (925) 945-0200
     Facsimile:  (925) 945-8792

18        SCHIFFRIN & BARROWAY LLP

19        Eric L. Zagar
     Sandra G. Smith

20        280 King of Prussia Road
     Radnor, PA  19087

21        Telephone:  (610) 667-7706
     Facsimile:  (610) 667-7056

22        Attorneys for Plaintiff

23

24

25

26

27

28

## VERIFICATION

I, **Jesse Brown** hereby verify that I have reviewed the Complaint and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.


DATE: _29 July 2006_                    _____
                                         JESSE BROWN